Good morning, Your Honors, and may it please the Court. My name is Gabriella DeVorte and I am counsel for Plaintiff and Appellant, Reno Dealership Group, LLC. With the Court's permission, I would like to reserve two minutes for rebuttal. Thank you. As you are aware, we are here today as a result of the District Court granting defendants Mk 12b-6 motion to dismiss plaintiff's first amended complaint for failure to state a claim and for untimely filing without leave to amend. There are several overarching principles in this case that have a bearing on the District Court decision. It is Appellant's position that 1. The District Court abuses discretion when it granted defendants motion to dismiss plaintiff's first amended complaint without leave to amend for untimely filing. Federal Rules of Civil Procedure 15a-2 provide that a trial court shall freely grant leave to amend when justice so requires. As the District Court previously cited in its first order for motion to dismiss plaintiff's original complaint, the Ninth Circuit favors amendments to pleadings with extreme liberality. Thus, plaintiff filing its opposition brief to defendants motion to dismiss a little over a week late, eight days to be exact, does not warrant dismissal without leave to amend. Although the Court has considerable latitude when considering the party's motion practice in enforcing local rules, it has long been held that the Court should take into consideration all relevant circumstances. The District Court cites DeWitten v. Screen Actors Guild to support its decision to grant the defendants motion. However, the District Court fails to address the fact that the judge in that case granted dismissal with leave to amend even where the defendant filed its motion 19 days late. Counsel, I suppose we agree with you that dismissal for being eight days late was excessive. We still have a ruling on the merits, so maybe I have some questions about that. Maybe starting with the claim based on the advertising by other dealers. What provision of your contract gives you or creates a duty on the part of general voters to regulate advertising by other dealers? Yes, Your Honor. So as the Michigan Court of Appeals found in Dobler v. Auto Owners Insurance Company, the goal of contract interpretation is to take the contract as a whole and apply the plain language used in order to honor the intent of the parties. And while the District Court paid much attention to the provisions that plaintiff alleges the defendant breached, it failed to analyze, mention, or even consider perhaps the most important section of the Dealer Sales and Service Agreement, which is the preamble, otherwise entitled The Purpose of the Agreement. And in the preamble, it explicitly states the intent of the parties and makes it very clear that the business relationship between GM and its dealers is built upon, in quote, mutual dependence, which requires a cooperation of trust and confidence between General Motors and its dealers. Well, that's fine, but how do you get out of that? And therefore, you, General Motors, must regulate what these third parties are doing. Right. So taking into consideration the DSSA's preamble and Provision 5.1.6 that states, if a dealer agrees to advertise and conduct promotional activities that are lawful and enhance the reputation of dealer, General Motors, and its product, GM has a mutual interest and obligation to ensure that its dealers advertise and conduct promotional activities that are lawful and enhance the reputation of all members. But that's, I mean, that provision imposes a duty on you, right? No, I presume that the other dealers who you say are engaged in this type of advertising have similar agreements with GM. But you're not asserting that you're a third-party beneficiary of those other agreements, right? So you have to find something in your agreement that creates this duty. And 5.1.6 tells you what you have to do. It doesn't say what GM has to do, does it? I understand your point, Your Honor. However, looking at the contract's terms, in light of the intent and meaning, it is plain disposition that reading everything in conjunction helps clarify the interpretation. And it should be read, obviously the terms and the contract itself should be read against the drafter. And, you know, it is believed or it is plain disposition that read everything together, if proven true, successfully state a claim that is plausible on its face that GM did have a duty to ensure that its dealers did not conduct deceptive or false advertising. I want to follow up on one question that Judge Miller asked, which I think is important. I want to make sure I understand your position on it. And that is you are not asserting, I take it, that you are a third-party beneficiary of the contracts between GM and the bad actor dealers who were doing the bad advertising. Is that correct? That is correct, Your Honor. Okay. So it has to be found in your contract and not in the other parties' contracts? That is correct, Your Honor. Okay. Which leads me to my next point, that the district court improperly granted defendants' motion to dismiss for failure to show that the DSSA, I'm sorry, for failure to show a tort duty independent of the DSSA. Even if the court doesn't find that the defendant owed plaintiff a common law duty of reasonable care and breached that duty by failing to perform services under the contract in a competent and reasonable manner, plaintiff proposes supplemental allegations to the First Amendment complaint alleging violations of Michigan and Nevada statutes. And which, can I just ask you, so the agreement, I believe, has a choice of law provision that says it's governed by Michigan law, right? And so now you have, if there's a statutory duty that's outside of the agreement, I guess maybe you wouldn't necessarily have to apply the contractual choice of law provision. But I'm a little confused as to how you can be relying on both Michigan and Nevada statutes to govern this relationship. So you could explain the choice of law analysis that says that both of these statutes would apply. Right. And so we would defer to the court to determine whether the Michigan law statutes or the Nevada law statutes would apply. However, plaintiff believes that Michigan law does not have a comparable false, deceptive, or misleading advertisement law that holds franchisers responsible for unfair practices. Further, the language under Michigan law is less strict against manufacturers, using language such as arbitrary and capricious, or based on unreasonable sales and services standards, while Nevada law holds franchisers and manufacturers to a higher standard, forbidding manufacturers to deliver cars in a method that are unfair, unreasonable, or inequitable. Thus, it is plaintiff's position that it would be in the best interest of public policy to apply Nevada law because Nevada has a materially greater interest than Michigan to protect Nevadans from fraud and deception. So we should apply Nevada law because it's the Nevada consumers' interests that are... But then what's the argument? I mean, you've also cited this Michigan statute. Why would... Because it is plaintiff's position that even if the court does not find that the Nevada statutes apply, defendant is still in violation of the Michigan Motor Vehicle Franchise Act, section 445.1574, which states, or in paraphrase states, a manufacturer may not modify an existing planer system for the allocation and distribution of new motor vehicles to dealers that causes the planer system to be based on unreasonable sales and services standards. And as pled on pages 62 to 65, paragraphs 32 to 42, GM's previous plan for the allocation of new motor vehicles were approximately 12 days. GM modified that existing plan in 2017 when it was unreasonably slow to deliver its vehicles after they arrived at the ports of entry. And when the new vehicles finally arrived, many were damaged with plastic wrappings melted on the vehicles, and Reno was responsible for the cosmetic repairs of these vehicles and had to make payments for some customers whose vehicles were several months late. So, it is plaintiff's position that even if the Nevada statutes do not apply, defendant did violate these statutes and acted negligently per se, which would serve as a supplemental allegation to the negligence cause of action. I mean, it's, you know, this is something that comes up a lot, right, in commercial relationships, like the time limit when somebody's, you know, one party is selling stuff to another and there's a question about the timeliness of the delivery, and it's usually something that's addressed in the contract. And here you have a contract that seems like it doesn't specify that. And so it's, you know, to me at least it's a little counterintuitive that we would look at these statutes and regulations that have these fairly general terms about, you know, being reasonable and read out of them an obligation to deliver on a particular schedule that you could have bargained for, but it's not in your agreement. I understand, Your Honor. However, according to the Twombly-Iqbal flexible plausibility standard, a complaint need only include enough facts to state a claim that's plausible on its face, and the facts alleged in the first amended complaint fully demonstrate that defendant has violated these statutes. Therefore, it is plaintiff's belief that, you know, the district court did not take into consideration all of the allegations as true, and if given the opportunity to file a second amended complaint, plaintiff would be able to sufficiently plead the facts to state a cause of action. Do you want to reserve? I just wanted to make a final point, Your Honor. We believe that a medical amendment would not be futile. The Ninth Circuit has repeatedly held that the district court should grant leave to amend, even if no request to amend the complaint has been made, unless it determines that the pleading could not be possibly cured by the allegation of other facts. Taking into consideration the preamble in the contract with the other provisions, as well as the statutes under Michigan and Nevada law, this is simply not the case that the amendment would be futile or immediately subject to dismissal. So plaintiff asks that the supplemental allegations be added to the cause of action for violation of the aforementioned statutes, and prejudice would not be so great as to warrant denial for leave to amend. As such, we pray that this court will reverse the decision in favor of appellant and afford appellant the opportunity to file a second amended complaint. Thank you. Good morning, Judges Miller and Collins, and good afternoon, Judge Corman. May it please the Court, my name is James Azadian, and I represent General Motors, LLC, the appellee in this matter with me at counsel table today is my partner, Corey Webster, and we're with the Dyke-McGossett firm. I'd like to just quickly address some of the questions that was asked by the panel, and if there's time, I'd like to also just make a couple of overarching points about this appeal. A question was raised about the choice of law provision. The court heard an argument today that Michigan law is somehow inferior. That is an argument appellant raised for the first time in its reply brief on appeal. On page 7 of its opening brief, appellant says that, in fact, Michigan law does apply and govern this case, and that can also be found in the actual agreement itself, which is, I believe, ER 94, Section 17, which states that Michigan law controls the agreement. Judge Miller also raised a question about whether the contract addresses the timing issues raised by the appellant. The answer is that the contract does address it. It leads it to GM's discretion expressly. I'd like to also respond to Judge Miller's question, what provision says GM must regulate other dealers? The answer is none. You will not find it in this contract. Can I ask you a question related to that? I'm talking about the principal issue in the case. Could GM have stopped the other dealers who were engaging in this conduct of giving these $10,000 discounts in return for a promise that they couldn't ask for, that the buyer would pay it like payments in six months? I don't know if I'm stating it right. But assuming that this was improper under the, that each dealer, I assume each dealer had the same contract with GM, that these were not individually negotiated contracts. Could GM, if it had wanted to, could it have gone to these dealers who the plaintiff was complaining about and have said to them, stop, you're violating your agreement, specifically 5.1.6. That includes that dealers will not advertise or conduct promotional activities in a misleading or unethical manner or that is harmful to the reputation of dealer General Motors or its products. Could they have stopped the other dealers from doing what the plaintiff complains about? Your Honor, there are a number of questions that you asked. I'd like to, I usually like to ask, answer questions with a yes or a no if I can. But let me just break up based on the number of, based on the questions that you asked. Your last question first. The answer is I don't know. I would need to speculate in looking at the complaint, whether it's the original complaint or the amended complaint before this court. The same, if you ask the same question looking at that pleading or that amended pleading, the answer would still be I don't know. Because those allegations just simply are not in the complaint. Suppose that they had been engaged in this kind of false advertising. Would that have been a breach of the contractual language? I think that under this agreement, yes. At that point, General Motors would have a, would be able to assert itself under the terms of this agreement to be able to regulate the conduct of this dealer under this agreement. Okay. So then the answer to Judge Corman's question is that if they all have the same agreement, and the answer is yes, they could have stopped the others, but they didn't. Well, Your Honor, again, I don't know. This was the other question I was trying to get at. I don't know that everyone has the same agreement. And I'm not trying to skirt the question. I, as I sit here today, I truly do not know. And that's not something that has been alleged in the actual pleadings themselves. Does GM benefit from this? To them, from this practice, does GM really care from its own economic interest that these other dealers are engaging in the conduct alleged? I get the impression that they don't care. They're almost benefiting from it. Your Honor, I hate to sound like a lawyer, but I, again, would need to speculate. Because I just, there's nothing in the pleading itself or in the record here that would allow me to answer that question. But what I can say is that if you do look at Section 5.1.6, Judge Corman, which is what your question had embraced, it does say what the dealer has to do. And it does not say anything that GM has to do. No, my question is premised upon the fact that if this is in every contract, then the dealer, each of those dealers has made the agreement not to engage in the prohibited conduct, and that General Motors could have enforced that agreement as to each of those dealers who are violating that clause, and that it's reasonable to assume that these clauses were not drawn for each individual dealer, that GM, this was reasonable to assume that these were aviation contracts and that GM put them in every agreement. Your Honor, I think that, let me just start off by saying that for purposes of our colloquy today, let's assume that that is in fact true, that all of the contracts are essentially the same, that there's some kind of boilerplate. Again, I don't know that that is true and that's not what is pled, but let's assume for purposes of this colloquy that that is the case. Then there is a provision in this contract, which is the third-party beneficiary provision. And that is at ER 103. And what it says there, and that's Section 70.9 of the agreement, it says that this agreement is not enforceable by any third parties and is not intended to convey any rights or benefits to anyone who is not a party to this agreement. So I think at the end of the day, the answer to your question is it really wouldn't matter. And the district court correctly observed that the provision, Section 5.1.6, along with Section 5.1.1 impose obligations on Reno dealership, not on GM or on any other dealer. Now, the court does have discretion to address new arguments, but it is our position that the court should not do so. There are a plethora of new arguments raised for the first time on appeal. And there are five main ones. The first new argument is that new legal theories of negligence based on Nevada statute or Nevada regulation and a new legal theory under a Michigan statute. Now, if Michigan law controls and it does, we know that the Nevada statute and regulation just simply falls out of the equation. Well, but the contract does not say, and sometimes choice of law provisions in contracts say, that all disputes arising from the parties' relationship shall be governed by the law. But that's not what this choice of law provision says. The choice of law provision says that the agreement is governed by Michigan law and does not take the broader position that every detail, including details that occur in other states, are not governed by the local laws of the states where those details occur. Your Honor, I think that is true. Therefore, Nevada law may apply to the delivery of vehicles to a Nevada dealership when Nevada has a statute regulating that activity in Nevada. And, Your Honor, using that logic, I think the answer is both the Nevada statute and the Nevada regulation just simply do not apply here under the facts alleged or under the legal theories that have been provided. Even the new legal theories provided to this court for the first time in the reply brief and for the first time in the O'Brien brief. And why would that be explained substantively by that? Because neither of the, neither the regulation nor the, the regulation which has to do with deceptive and misleading advertising, there's nothing in that regulation that places a duty on anyone to regulate or to police or to otherwise combat the speech of another speaker, the deceptive or misleading speech of another speaker. The regulation simply, simply applies to the speaker, the misleading or the deceptive speaker, as it were. Now, with respect to the Nevada statute, which does not apply to speech, that applies to the delivery of goods or the delivery of vehicles, as in this case. There's no duty imposed on the deliverer, on GM, let's say, to deliver vehicles within a certain amount of time or within, or meeting certain conditions for those wares or for those goods. You're just not going to find that in the statute. It does say, it says, failing to deliver in reasonable quantities and within a reasonable time after receipt of an order to a vehicle, to a dealer, any new vehicle, etc. So, I mean, it doesn't go so down, it's not a time certain, but it's a reasonable time. And I think that is a fair reading. But again, here, there was nothing to suggest, when you read the allegations, even in the reply brief, they go on to say that it's the ports of entry that were backed up, that it was the chain supply that was backed up. There's nothing to suggest that GM acted unreasonably in delivering these goods and causing the goods to be put in transit for delivery to Reno dealership. Now, with the Michigan statute, again, raised for the first time on appeal, and thus waived under this court's precedent under Vincent. Michigan also has to do with the delivery of goods, but here it has to do with arbitrary or capricious action on the part of the deliverer. Here there is no allegation whatsoever, no fact provided, that GM was acting arbitrarily or capriciously. There was one statement about the local rule, and what I wanted to say about the local rule is just something really simple, and that is that this case is not the proper vehicle, I think, to really squarely address the propriety of the local rule and how that local rule can necessarily be applied by the district court. That is because, as the court noted, or as the panel noted, this is a case where the judge, the district judge, did address the merits of the arguments under the 1286 opposition. So it wasn't a situation where the judge used exclusively the rationale of the local rule and necessarily based the decision on the local rule in order to dismiss the case or to dismiss the complaint. There is one other point that I wanted to make, if I might, and that is with respect to the new public policy argument that appears in the reply. The last two pages of Appellant's reply brief presents a new argument not raised in the district court or even in the opening brief, and Appellant suggests that the choice of law provision in the contract is invalid. This isn't just a new argument. It contradicts the position Appellant has taken at all times up until the reply brief. In the district court, as I mentioned earlier, Appellant briefed the issues as if Michigan law governs, and, in fact, instructed the district court that Michigan law governs, as it did in the opening brief to this court. Appellant cites only one case in support of its new change in position, but that one case, the Sixth Circuit case of Bannock, Inc. v. Yogurt Ventures, actually hurts Appellant's latest new theory. The court in that case rejected a challenge to a choice of law provision. As far as the other new arguments that were made on appeal,  their excuses for late filing, those excuses were never presented to the district court. They were never made the subject of a Rule 60B motion, for example. In fact, plaintiff never even so much as asked the district court for leave to file a late opposition where negligence on the part of counsel could have been established. Also, they seek to save their breach of contract claim by relying on the preamble of the agreement, as you heard during the opening argument. The preamble, they believe, is the most important part of this contract. Consistently with their other arguments, this is also the first time that argument has been mentioned. It is here in this court, it is in their opening brief that they make that argument. Of course, the trial court did not have the benefit of those arguments and was not able to address those. And the agreement they claim now on appeal is ambiguous. It's an ambiguous contract and should be construed against GM. Again, these are arguments made for the first time on appeal and are waived. I see I'm actually out of time. Unless there are further questions, I will submit. Thank you for the opportunity to present our argument. Ms. Karkin. Thank you, Your Honor. First, I would like to quickly address Judge Miller's previous point, a Defendant's Counsel point about the choice of law provision. First, the parties did agree to apply Michigan state law to the choice of law provision of the DSSA, which strictly applies to the contract and breach of contract claims. Michigan law, however, this does not apply to the Nevada law negligence claims. Even the district court cited to Nevada law in Vernon v. Rockhill under his negligence analysis in its order to dismiss the First Amendment complaint. And both parties cited to Nevada law in the lower courts. Further, in regards to Defendant's Counsel's argument that this is a new legal theory under Nevada and Michigan laws, this is purely a question of law. And the opposing party will suffer no prejudice as a result of failure to raise this issue in the appellate court. In fact, in Raich v. Gonzalez, the Ninth Circuit recognizes limited occasions where the introduction of new arguments on appeal in support of preserved claims or issues may be permitted. Including applying this reasoning, the Michigan and Nevada laws mentioned are purely questions of law, and these laws simply provide further support for plaintiff's negligence allocations that were already raised in the district court and proposed violations of the subject statutes to demonstrate the defendant acted negligently per se, as we previously stated. Further, Defendant's Counsel attempts to state that Michigan Motor Vehicle Franchise Act, section 445.1574, only holds defendant liable for violating the statute if the modifying existing complainant system was arbitrary or capricious, but fails to mention the part that says, or if it is based on unreasonable sales and services standards. And as planned in the first amended complaint, pages 62 to 65, defendant did modify this existing plan and delivered vehicles in an unreasonable amount of time. I believe that's all. Oh, finally, in regards to the Nevada Administrative Code for the False, Deceptive, or Misleading Advertisements, a licensed manufacturer may not indirectly cause any statement that should be known through the exercise of reasonable care to be disseminated to the public. Here, the first amended complaint alleges that after Reno discovered these unethical marketing practices, they brought it to the attention of GM's management and GM's Western Regional Director, Robert Coffey. And Coffey refused to even look at the evidence that was being presented. By failing to investigate its dealers, and instead by profiting from these misleading advertising tactics, GM indirectly caused these statements to be disseminated to the public. Let me ask just two clarifying questions. I want to make sure I understand your position. So the good faith and fair dealing that was in the original complaint and that was not repleted in the first amended complaint, that's just gone from the case, correct? I'm sorry, Your Honor, can you repeat your question? The breach of covenant of good faith and fair dealing that was in the original complaint and not repleted in the first amended complaint after it was originally dismissed on the first order, that's out of the case and not before us, is that correct? That is correct, Your Honor, because there is a specific provision in the DSSA that states that no fiduciary relationship was created between the parties. Therefore, plaintiff did concede to those points. Okay, and then my second question is, is your opposing counsel correct in stating that you presented no explanation to the district court for the lay filing, you just submitted it late without a declaration, without any leave to submit it later, or any kind of an explanation presented to the district court, is that correct? So, Your Honor, that is correct. However, there is several reasons for that, and they all were due to inadvertence. The question is, did you tell the district court the explanation? That was, I understand the explanation. Correct, Your Honor. But did the district court ever get any of that information? So, we did have someone on our team, the supervising attorney's team, call the district court and speak to the clerk who gave verbal affirmations that the lay filing would be of little to no consequence to the case. So, therefore, there were no pleadings submitted. However, once the case was dismissed without leave to amend, this issue was brought to the court's attention in the opening brief. Okay. My final point is, oh, my time is up, I see. Just taking into consideration the preamble and the explicit words that say, there's a mutual dependence of cooperation, trust, and trust between the parties, GM clearly breached that trust in direct breach of the contract, and plaintiff prays that this court will take into consideration all the relevant factors and circumstances that were discussed today and remand the case in order for plaintiff to be able to file a second amended complaint. Thank you. Thank you, counsel. Thank you both, counsel, for their helpful arguments this morning and afternoon. And the case is submitted, and that concludes our calendar for the day, and we are adjourned until tomorrow.
judges: MILLER, COLLINS, Korman